22-cr-456

**FILED**

SEP 14 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**Judge Pacold**
**Magistrate Judge Cummings**

Sept 14, 2023

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 22-CR-456 |
| v. | Violations: Title 18, United States Code, Section 1343 |
| SHARHABEEL SHREITEH and TRACY MITCHELL | **SUPERSEDING INDICTMENT** |
| | **UNDER SEAL** |

## COUNT ONE

The SPECIAL JANUARY 2023 GRAND JURY charges:

1.    At times material to this indictment:

### The Small Business Administration

a.    The U.S. Small Business Administration ("SBA") was a United States government agency that provided support to small businesses.

### The Paycheck Protection Program

b.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

c.    One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses and sole proprietors for job retention and certain other expenses, through a program called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

d. To obtain a PPP loan, a sole proprietor, self-employed individual, or business submitted a PPP loan application, which was signed by the applicant or an authorized representative of the business. The PPP loan application required the applicant to acknowledge the program rules and make certain affirmative certifications regarding the eligibility of the proprietorship, individual, or business. In the application, sole proprietors and self-employed individuals were required to provide, among other things, their average monthly payroll. This figure was used to calculate the applicant's eligibility and the amount of money the sole proprietor or self-employed individual could receive under the PPP. Applicants were also required to make good-faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations.

e. PPP loan proceeds were required to be used by the sole proprietorship, self-employed individual, or business for certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven by the SBA if the sole proprietorship, self-employed individual, or business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

f. To gain access to funds through the PPP, sole proprietorships, self-employed individuals, and small businesses applied to financial institutions participating in the PPP and received the loans directly from those financial institutions as the lender.

2

g. Participating lenders required applicants for PPP loans to provide truthful information about the sole proprietorship, self-employed individual, or business and its owner, including truthful information about the applicant's payroll, income, operating expenses, and how the PPP loan would be used, which information was material to lenders' approval, terms, and funding of loans.

### *Defendants*

a. SHARHABEEL SHREITEH was an accountant and the owner of Financial Savvy Inc., located in Palos Hills, Illinois. SHREITEH resided in Crete, Illinois.

b. TRACY MITCHELL was the owner of House of Deals, Inc. and House of Furniture and Mattress, Inc., both located in Joliet, Illinois.

### *Lenders and Loan Processers*

c. Lender A was a financial technology company that processed PPP loan applications on behalf of financial institutions. Lender A maintained computer servers that were located outside of Illinois.

d. Lender B was a financial technology company that processed PPP loan applications and issued PPP loans to qualified applicants. Lender B maintained computer servers that were located outside of Illinois.

e. Lender C was a small business lender that issued PPP loans to qualified applicants. Lender C maintained computer servers that were located outside of Illinois.

3

f.      Lender D was a financial technology company that processed PPP loan applications on behalf of financial institutions. Lender D maintained computer servers that were located outside of Illinois.

g.      Lender E was a financial technology company that processed PPP loan applications on behalf of financial institutions. Lender E maintained computer servers that were located outside of Illinois.

h.      Lender F was a bank that issued PPP loan to qualified applicants. Lender F maintained computer servers that were located outside of Illinois.

i.      Lender G was a financial technology company that processed PPP loan applications on behalf of financial institutions. Lender G maintained computer servers that were located outside of Illinois.

j.      Lender H was a financial institution that issued PPP loans to qualified applicants. Lender H maintained computer servers that were located outside of Illinois.

k.      Lender I was a bank that issued PPP loans to qualified applicants. Lender I maintained computer servers that were located outside of Illinois.

### *The Scheme to Defraud*

2.      Beginning no later than in or around June 2020, and continuing until at least in or around April 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

4

SHARHABEEL SHREITEH and
TRACY MITCHELL,

defendants herein, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from government relief programs by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that SHREITEH and MITCHELL (together, the "defendants"), for the purpose of fraudulently obtaining approximately $7.88 million in PPP funds, submitted numerous PPP loan applications and supporting documents, on behalf of purported sole proprietors, self-employed individuals, and businesses, including Individuals A through H, which applications and supporting documents contained materially false statements and misrepresentations concerning, among other things, the applicants' occupations, payroll, income, and expenses.

4. It was further part of the scheme that SHREITEH and MITCHELL prepared, and submitted to Lenders A through I (together, the "Lenders"), PPP loan applications on behalf of numerous individuals and business entities ("clients"), in exchange for approximately $1,000 or more per successful loan application. In these applications, the defendants falsely and fraudulently represented their clients' occupations, income, and incurred business expenses, knowing at the time that (a) their clients had neither earned the income nor incurred the expenses stated in the applications; and (b) they had not asked their clients to tell them the name of their

occupations, the amounts of income they earned, and the amounts of business expenses they incurred.

5.     It was part of the scheme that defendant MITCHELL recruited several clients, including Individuals A, B, F, and H, to provide personal identifying information and documents, including bank statements and social security numbers, which information and documents SHREITEH and MITCHELL used to prepare and submit false and fraudulent PPP loan applications in the names of those clients. MITCHELL facilitated the preparation and submission of these fraudulent PPP loan applications in exchange for approximately $4,000 or more per successful loan application.

6.     It was further part of the scheme that, in PPP loan applications submitted to various lenders, including Lenders A through I, SHREITEH and MITCHELL represented that clients were sole proprietors and eligible self-employed individuals. As part of the scheme, SHREITEH and MITCHELL falsely represented that those clients each had payrolls of at least $90,000 per year. SHREITEH and MITCHELL knew at the time that the represented amount of payroll was false because they had not obtained that information from their clients.

7.     It was further part of the scheme that, to substantiate the claimed occupations, income, and expenses of their clients, SHREITEH and MITCHELL prepared and submitted to the Lenders, and caused to be prepared and submitted to the Lenders, falsified Schedule C tax forms, which falsely represented their clients' principal businesses and professions, yearly net profits, and total expenses.

6

SHREITEH and MITCHELL knew at the time that the Schedule C forms that they submitted had not been filed with the IRS and that they contained false and fraudulent information about their clients' occupations, income, and expenses because they had not obtained that information from his clients.

8. It was further part of the scheme that, to substantiate the claimed expenses of their clients, SHREITEH and MITCHELL prepared and submitted to the Lenders, and caused to be prepared and submitted to the Lenders, falsified business invoices, which documented business expenses that those clients never incurred. SHREITEH and MITCHELL knew at the time that their clients had not incurred the expenses documented in those invoices.

9. It was further part of the scheme that, through the submission of these false and fraudulent PPP loan applications, SHREITEH and MITCHELL caused Lenders A through I to disburse at least approximately $7.88 million in PPP funds to their clients, some of which funds were used to pay SHREITEH and MITCHELL for their preparation and submission of the fraudulent loan applications and to pay MITCHELL for providing information about his clients to SHREITEH. SHREITEH and MITCHELL knew at the time that their clients were not entitled to the PPP funds that Lenders A through I disbursed.

10. It was further part of the scheme that SHREITEH and MITCHELL misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

7

11. On or about the dates set forth below, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendants, as set forth below, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, listed below, each such writing, sign, and signal constituting a separate count:

| COUNT | DEFENDANT | DATE | WRITING, SIGN, AND SIGNAL |
|---|---|---|---|
| One | SHARHABEEL SHREITEH and TRACY MITCHELL | June 24, 2020 | an internet transmission of a PPP loan application for Individual A to Lender A's computer servers located outside of Illinois |
| Two | SHARHABEEL SHREITEH and TRACY MITCHELL | June 24, 2020 | an internet transmission of a PPP loan application for Individual B to Lender A's computer servers located outside of Illinois |
| Three | SHARHABEEL SHREITEH and TRACY MITCHELL | July 15, 2020 | an internet transmission of a PPP loan application for Individual B to Lender A's computer servers located outside of Illinois |
| Four | SHARHABEEL SHREITEH | July 16, 2020 | an internet transmission of a PPP loan application for Individual C to Lender A's computer servers located outside of Illinois |
| Five | SHARHABEEL SHREITEH | July 31, 2020 | an internet transmission of a PPP loan application for Individual D to Lender B's computer servers located outside of Illinois |

| COUNT | DEFENDANT | DATE | WRITING, SIGN, AND SIGNAL |
|---|---|---|---|
| Six | SHARHABEEL SHREITEH and TRACY MITCHELL | August 3, 2020 | an internet transmission of a PPP loan application for Individual B to Lender B's computer servers located outside of Illinois |
| Seven | SHARHABEEL SHREITEH and TRACY MITCHELL | February 9, 2021 | an internet transmission of a PPP loan application for Individual E to Lender F computer servers located outside of Illinois |
| Eight | SHARHABEEL SHREITEH and TRACY MITCHELL | March 1, 2021 | an internet transmission of a PPP loan application for Individual B to Lender E's computer servers located outside of Illinois |
| Nine | SHARHABEEL SHREITEH | March 14, 2021 | an internet transmission of a PPP loan application for Individual D to Lender D's computer servers located outside of Illinois |
| Ten | TRACY MITCHELL | March 17, 2021 | an internet transmission of a PPP loan application for Individual E to Lender F computer servers located outside of Illinois |
| Eleven | SHARHABEEL SHREITEH | March 20, 2021 | an internet transmission of a PPP loan application for Individual F to Lender D's computer servers located outside of Illinois |
| Twelve | SHARHABEEL SHREITEH and TRACY MITCHELL | March 23, 2021 | an internet transmission of a PPP loan application for House of Deals Furniture and Mattress, Inc. to Lender G's computer servers located outside of Illinois |
| Thirteen | TRACY MITCHELL | April 14, 2021 | an internet transmission of a PPP loan application for Individual G to Lender I's computer servers located outside of Illinois |

9

| COUNT | DEFENDANT | DATE | WRITING, SIGN, AND SIGNAL |
|---|---|---|---|
| Fourteen | SHARHABEEL SHREITEH | April 7, 2021 | an internet transmission of a PPP loan application for Individual D to Lender C's computer servers located outside of Illinois |
| Fifteen | SHARHABEEL SHREITEH | April 8, 2021 | an internet transmission of a PPP loan application for Individual F to Lender C's computer servers located outside of Illinois |
| Sixteen | TRACY MITCHELL | March 23, 2021 | an internet transmission of a PPP loan application for Individual G to Lender H's computer servers located outside of Illinois |

In violation of Title 18, United States Code, Section 1343.

10

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2023 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Indictment, defendants shall forfeit to the United States of America any property that constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.      The property to be forfeited includes, but is not limited to, a personal money judgment in an amount equal to the proceeds derived from the offenses in violation of Title 18, United States Code, Section 1343.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

ACTING UNITED STATES
ATTORNEY

11